AO 472 (Rev. 11/16) Order of Detention Pending Trial

# UNITED STATES DISTRICT COURT
for the
Northern District of Ohio

| United States of America | ) |
|---|---|
| v. | ) |
| JEREMY ADAMS | ) Case No. 3:24-cr-00014-JJH |
| *Defendant* | ) |

## ORDER OF DETENTION PENDING TRIAL

### Part I - Eligibility for Detention

Upon the

☑ Motion of the Government attorney pursuant to 18 U.S.C. § 3142(f)(1), or
☐ Motion of the Government or Court's own motion pursuant to 18 U.S.C. § 3142(f)(2),
   and Defendant's request for pretrial release (ECF #168),
the Court held a detention hearing and found that detention is warranted. This order sets forth the Court's findings of fact and conclusions of law, as required by 18 U.S.C. § 3142(i), in addition to any other findings made at the hearing.

### Part II - Findings of Fact and Law as to Presumptions under § 3142(e)

☐ **A. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(2)** *(previous violator)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community because the following conditions have been met:

   ☐ **(1)** the defendant is charged with one of the following crimes described in 18 U.S.C. § 3142(f)(1):
      ☐ **(a)** a crime of violence, a violation of 18 U.S.C. § 1591, or an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed; **or**
      ☐ **(b)** an offense for which the maximum sentence is life imprisonment or death; **or**
      ☐ **(c)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508); **or**
      ☐ **(d)** any felony if such person has been convicted of two or more offenses described in subparagraphs (a) through (c) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (a) through (c) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; **or**
      ☐ **(e)** any felony that is not otherwise a crime of violence but involves:
         **(i)** a minor victim; **(ii)** the possession of a firearm or destructive device (as defined in 18 U.S.C. § 921);
         **(iii)** any other dangerous weapon; or **(iv)** a failure to register under 18 U.S.C. § 2250; **and**
   ☐ **(2)** the defendant has previously been convicted of a Federal offense that is described in 18 U.S.C. § 3142(f)(1), or of a State or local offense that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed; **and**
   ☐ **(3)** the offense described in paragraph (2) above for which the defendant has been convicted was committed while the defendant was on release pending trial for a Federal, State, or local offense; **and**
   ☐ **(4)** a period of not more than five years has elapsed since the date of conviction, or the release of the defendant from imprisonment, for the offense described in paragraph (2) above, whichever is later.

☑ **B. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(3)** *(narcotics, firearm, other offenses)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community because there is probable cause to believe that the defendant committed one or more of the following offenses:

☐ **(1)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508);

☐ **(2)** an offense under 18 U.S.C. §§ 924(c), 956(a), or 2332b;

☐ **(3)** an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;

☐ **(4)** an offense under Chapter 77 of Title 18, U.S.C. (18 U.S.C. §§ 1581-1597) for which a maximum term of imprisonment of 20 years or more is prescribed; **or**

☑ **(5)** an offense involving a minor victim under 18 U.S.C. §§ 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425.

☑ **C. Conclusions Regarding Applicability of Any Presumption Established Above**

☐ The defendant has not introduced sufficient evidence to rebut the presumption above, and detention is ordered on that basis. *(Part III need not be completed.)*

**OR**

☑ The defendant has presented evidence sufficient to rebut the presumption, but after considering the presumption and the other factors discussed below, detention is warranted.

### Part III - Analysis and Statement of the Reasons for Detention

After considering the factors set forth in 18 U.S.C. § 3142(g) and the information presented at the detention hearing, the Court concludes that the defendant must be detained pending trial because the Government has proven:

☑ By clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community.

☐ By a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required.

In addition to any findings made on the record at the hearing, the reasons for detention include the following:

☑ Weight of evidence against the defendant is strong
☑ Subject to lengthy period of incarceration if convicted
☐ Prior criminal history
☐ Participation in criminal activity while on probation, parole, or supervision
☐ History of violence or use of weapons
☐ History of alcohol or substance abuse
☐ Lack of stable employment
☐ Lack of stable residence
☐ Lack of financially responsible sureties

AO 472  (Rev. 11/16)  Order of Detention Pending Trial

- ☑ Lack of significant community or family ties to this district
- ❏ Significant family or other ties outside the United States
- ❏ Lack of legal status in the United States
- ❏ Subject to removal or deportation after serving any period of incarceration
- ☑ Prior failure to appear in court as ordered
- ❏ Prior attempt(s) to evade law enforcement
- ❏ Use of alias(es) or false documents
- ❏ Background information unknown or unverified
- ❏ Prior violations of probation, parole, or supervised release

OTHER REASONS OR FURTHER EXPLANATION:

Please see attached.

### Part IV - Directions Regarding Detention

The defendant is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  The defendant must be afforded a reasonable opportunity for private consultation with defense counsel.  On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

Date: 04/04/2024                                                              /s/ Darrell A. Clay
                                                                         United States Magistrate Judge

*United States v. Jeremy Adams*
Northern District of Ohio, Case No. 3:24-CR-00014-JJH

### Statement of Reasons for Detention

Following dismissal of a prior case,[1] Defendant Jeremy Adams was charged again on January 3, 2024 pursuant to a Criminal Complaint with violating 18 U.S.C. § 2251(a). (ECF #1). The grand jury returned a single-count indictment against Mr. Adams on January 10, 2024, charging only the single violation of § 2251(a). (ECF #9).

According to the affidavit of Special Agent Jason Guyton of Homeland Security Investigations supporting the Criminal Complaint, in May 2017, Mr. Adams had sexual contact with a 17-year-old female in a motel in Swanton, Ohio. SA Guyton further averred the 17-year-old was first contacted by Mr. Adams online when she was 16, that Mr. Adams traveled from his then-home in North Carolina to take her to the movies (at which time he put his hands in her pants and had her touch his penis), and that this then led to the incident in May 2017. Further, SA Guyton averred that Mr. Adams filmed the May 2017 sexual encounter, and later distributed still photos from the encounter to at least two other females. SA Guyton further alleged that the 17-year-old unblocked Mr. Adams on social media in 2020, he contacted her "soon thereafter," told her he was being investigated by law enforcement, and "if she was contacted by law enforcement not to tell them anything about her age when they met to 'protect [him].'" (ECF #1-1 at PageID 12).

SA Guyton's affidavit also describes other conduct, for which Mr. Adams has not been charged,[2] involving a purported 14-year-old female in California. Mr. Adams allegedly engaged in sexually explicit communications with this person, asked her to send nude photos of herself, then arranged to meet the girl in a coffee shop. It turns out that the girl was, in fact, a group of males (some themselves juveniles) who were posing as a girl in their communications with Mr. Adams. The police investigation of that matter ultimately yielded a hard drive on which Mr. Adams had digital photographs and videos of himself having sex with the 17-year-old referenced above. Other

---

[1] *See United States v. Jeremy Adams*, Northern District of Ohio, Case No. 3:21-CR-00504-JJH (dismissed Jan. 3, 2024 pursuant to 18 U.S.C. § 3161(b) because more than 30 nonexcludable days passed between Mr. Adams's arrest and his indictment) (hereinafter, *Adams I*).

[2] Uncharged conduct can be considered when deciding whether to release or detain an individual under the Bail Reform Act. *See United States v. Gaston*, No. 2:21-CR-36-JD-JPK, 2021 WL 1170201, at *5 (N.D. Ind. March 26, 2021) (collecting cases from the Second Circuit and numerous district courts addressing this issue). But when considering uncharged conduct, a court "must carefully weigh the reliability of such evidence in a manner that is usually not required when criminal convictions are used to argue for detention." *Id.*; *see also United States v. Sanders*, 466 F. Supp. 3d 779, 786 (E.D. Mich. 2020) ("Uncharged conduct should be accorded comparatively less weight in assessing dangerousness."). In my analysis below, to the extent I rely on SA Guyton's allegations of additional alleged but uncharged criminal conduct by Mr. Adams, I have followed the guidance established by this body of caselaw.

*United States v. Jeremy Adams*
Northern District of Ohio, Case No. 3:24-CR-00014-JJH

digital evidence was also allegedly recovered from Mr. Adams's iPhone that police obtained through a search warrant.

If convicted of the charged conduct, Mr. Adams faces a mandatory minimum of 15 years of imprisonment, up to 30 years; a $250,000 fine; supervised release of at least five years, up to life; and a $100 special assessment. Mr. Adams may also be responsible for an additional $5,000 special assessment under the Justice for Victims of Trafficking Act, registration as a sex offender, and restitution obligations.

At his Initial Appearance on January 4, 2024, the government moved for Mr. Adams's detention; Mr. Adams requested to be heard on the issue. A detention hearing was scheduled for January 16, 2024 and I ordered Mr. Adams temporarily detained until that hearing could be held. Mr. Adams was arraigned on January 16, 2024, at which time the detention hearing was continued at Mr. Adams's request until January 25, 2024. (Non-document entry of Jan. 16, 2024).

Then, on January 24, 2024, Mr. Adams again moved for a continuance of the detention hearing, which I granted. (ECF #12 and non-document entry of Jan. 24, 2024). Upon notification that Mr. Adams was prepared to proceed, I held a detention hearing on March 27, 2024. At the conclusion of the hearing, I held the record open until April 2, 2024, for counsel to provide documentation regarding Mr. Adams's military record. (Non-document entry of Mar. 27, 2024). Also, on March 22, 2024, Mr. Adams filed a Brief in Support of Pretrial Release. (ECF #168).

*Prior Litigation Regarding Mr. Adams's Pretrial Detention*

The March 27th hearing was the latest instance in which a court has been asked to decide the propriety of releasing Mr. Adams. Each time, pretrial detention has been found appropriate.

During his earlier case in this Court, I held a detention hearing on June 23, 2021 and issued an order finding pretrial detention was warranted. (*See Adams I*, ECF #9). Mr. Adams subsequently filed a Motion for Pretrial Release (*Adams I*, ECF #15), but later made an oral motion withdrawing his request that Judge Helmick granted (*Adams I*, non-document entry of Sept. 6, 2022).

On October 5, 2022, Mr. Adams filed a Motion for Expedited Order for Immediate Release. (*Adams I*, ECF #54). On October 11, 2022, Judge Helmick issued a Memorandum Opinion and Order denying Mr. Adams's request for release. (*Adams I*, ECF #55).

On October 17, 2022, Mr. Adams filed a Notice of Appeal from Judge Helmick's October 11, 2022 order denying immediate release. (*Adams I*, ECF #58). On March 16, 2023, the Sixth Circuit denied Mr. Adams's request for release pending appeal. (*See United States v. Adams*, 6th Cir. No. 22-3879; *see also Adams I*, ECF #72).

*United States v. Jeremy Adams*
Northern District of Ohio, Case No. 3:24-CR-00014-JJH

Mr. Adams filed another Motion for Pretrial Release on April 10, 2023. (*Adams I*, ECF #74). On September 5, 2023, Judge Helmick denied the motion. (*Adams I*, non-document entry of Sept. 5, 2023). On September 11, 2023, Mr. Adams appealed that decision to the Sixth Circuit. (*Adams I*, ECF #121).

On January 5, 2024, the Sixth Circuit affirmed Judge Helmick's denial of Mr. Adams's request for pretrial release. (*See United States v. Adams*, 6th Cir. No. 23-3755, ECF #24; *see also Adams I*, ECF #179).[3] On January 25, 2024, Mr. Adams petitioned the Sixth Circuit for en banc rehearing. (*United States v. Adams*, 6th Cir. No. 23-3755, ECF #29). But, on February 21, 2024 – in light of Judge Helmick's dismissal order in *Adams I* – the Sixth Circuit withdrew its January 5, 2024 opinion, dismissed Mr. Adams's appeal as moot, and denied his request for rehearing en banc also as moot. (*See United States v. Adams*, 6th Cir. No. 23-3755, ECF #30).

*Proposed Release Conditions and Hearing Evidence*

Similar to his 2021 request to me in *Adams I*, Mr. Adams proposes to be released on the following conditions:

- He would reside with his mother, K.T., at her home in California;

- She would act as his third-party custodian and supervise him continuously on a 24-hour-a-day, 7-day-a-week basis;

- He would be placed on location monitoring; and

- He would be completely prohibited from accessing the internet.

K.T. testified by video that she is Mr. Adams' mother, and he is her first-born child. She lives in Stockton, California in a mobile home park. Also residing with her is another adult son, A.T.

K.T. confirmed that she would supervise Mr. Adams on a 24/7 basis. She is retired, and the only regular commitments that take her away from her home are (i) a Friday meeting at her church, and (ii) on Sundays, she helps an elderly couple at their home (and Mr. Adams is welcome to visit that home with her). She occasionally visits the doctor and does the grocery shopping. Mr. Adams would have his own bedroom in the home.

---

[3] I note that the Sixth Circuit's opinion is not available on Westlaw or Lexis, and it is sealed on the Sixth Circuit's public docket. While it is not available to the public via this Court's ECF system, I have been able to access and review it. Counsel for the government quoted extensively from the decision during argument in support of continued detention.

3

*United States v. Jeremy Adams*
Northern District of Ohio, Case No. 3:24-CR-00014-JJH

She confirmed that she understood the obligations of serving as a third-party custodian and will report Mr. Adams if he violates his release conditions. Although she previously had some health challenges that might have impacted her ability to serve as a third-party custodian, those conditions have abated and she anticipates no difficulties discharging her custodial obligations.

She does have internet access in the home, but she only has a limited data plan and there are no computers actively connected to it. A.T. has a tablet device that he uses for internet access. She acknowledged that Mr. Adams is more "tech-savvy" than she is. She also acknowledged that she had no information about A.T.'s criminal conviction – when she asked, he told her "love you mom, but it's none of your business" (or words to that effect).

K.T. also admitted that her home is located approximately 100 yards from a neighborhood playground and pool. She denied having any contact with any minors who live in the neighborhood.

During the hearing, I also received into evidence Court Exhibit 1, an undated, unsworn statement from the former 17-year-old alleged victim of Mr. Adams. She speculates "it is very doubtful that anyone appointed to watch over him during pre-trial could actually do so; he does what he wants to do." She characterized the possibility of his pre-trial release as "concerning" both for her personally and for the community. She opined that "he will continue to be a danger to the community if allowed to be released before the trial." She also stated:

> For my own personal concerns, it has become a frequent need of mine to check the CCNO inmates list. It helps to know he is still detained and unable to show up at my door. I am afraid of him, and afraid of retaliation upon a potential pre-trial release for my involvement in the investigation and upcoming trial.

I also received Government Exhibits 1, 2, and 3, all relating to Mr. Adams's prior military service. Post-hearing, I received Mr. Adams's Supplement to the Record of the Detention Hearing. (ECF #170).

Pursuant to 18 U.S.C. § 3142(e)(3)(E), there is a presumption in favor of detention in this matter. Therefore, I begin my analysis by presuming Mr. Adams should be detained.

*Analysis of Bail Reform Act Factors*

Under 18 U.S.C. § 3142(g), I consider four factors in determining whether there are conditions of release that will reasonably assure the appearance of the defendant as required and the safety of any other person and the community. Those factors are: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. Having weighed all

*United States v. Jeremy Adams*
Northern District of Ohio, Case No. 3:24-CR-00014-JJH

factors under 18 U.S.C. § 3142, I conclude that, while Mr. Adams introduced evidence sufficient to overcome the presumption,[4] his release under the proposed conditions – or, for that matter, any conditions – is not appropriate.

### *18 U.S.C. § 3142(g)(1)*

Under the first factor, I consider the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device. Here, as described above, the pending charge against Mr. Adams involves a minor victim.

I conclude the first factor weighs strongly in favor of detention.

### *18 U.S.C. § 3142(g)(2)*

Under the second factor, I consider the weight of the evidence against the person. "This factor goes to the weight of the evidence of dangerousness [or flight risk], not the weight of the defendant's guilt." *Stone*, 608 F.3d at 948; *see also United States v. Homedes*, No. 5:22-CR-00033, 2022 WL 822153, at *6 (E.D. Ky. Mar. 18, 2022) (noting that the (g)(2) factor looks "only toward the weight of flight risk evidence, not toward the weight of proof of Defendant's guilt"). "Although a prior record of violence eases the government's burden of showing dangerousness, it is not essential." *United States v. Rodriguez*, 950 F.2d 85, 89 (2d Cir. 1991).

Here, Mr. Adams stands accused of producing child pornography when he allegedly filmed his sexual activity with a 17-year-old. And, while not charged with distributing child pornography, the government has alleged that Mr. Adams distributed that recording to both the victim and another person. "Receipt, distribution, and possession of child pornography are extremely dangerous to the community, particularly because such activities are often hidden from a defendant's closest friends and family members." *United States v. Fei Guo Tang*, No. 3:19-CR-00014-GFVT-MAS, 2019 WL 2453655, at *4 (E.D. Ky. June 12, 2019); *see also United States v. Rosenschein*, No. 16-CR-4571, 2017 WL 3600739, at *7 (D.N.M. Jan. 6, 2017) ("Even if the Court considers only the possession [of child pornography] charge, being a 'consumer' of child pornography involving prepubescent children encourages others to sexually abuse young children to create pornography."). "[I]t follows that *production* of child pornography is even more pernicious." *United States v. Adams*, 6th Cir. No. 23-3755, ECF #24; *see also Adams I*, ECF #179.

---

[4] Pursuant to *United States v. Stone*, 608 F.3d 939 (6th Cir. 2010), *cert. denied*, 562 U.S. 978 (2010), to overcome the presumption of detention, the "defendant's burden of production is not heavy"; all that is required is "some evidence." *Id.* at 945 (quotation omitted).

*United States v. Jeremy Adams*
Northern District of Ohio, Case No. 3:24-CR-00014-JJH

I conclude the second factor also strongly weighs in favor of detention based on the weight of evidence as to Mr. Adams's serious potential dangerousness if released. The proposed release conditions do not sufficiently mitigate my concerns in this regard.

*18 U.S.C. § 3142(g)(3)*

Under the third factor, I consider the history and characteristics of the person. This includes "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). I also consider "whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law." 18 U.S.C. § 3142(g)(3)(B).

Mr. Adams is 47 years old and has never been married. From a prior relationship, he has a son, age 23, who lives in Kentucky. Mr. Adams has an associate's degree from San Joaquin Delta College and is currently pursuing a bachelor's degree in engineering from the same school. In addition to A.T., he has four other siblings who reside in California, Wyoming, and Wisconsin. The extent of his contact with them is unknown. Mr. Adams's father also resides in California.

At the time of Mr. Adams' arrest, he reported being employed part-time at Veteran's Alliance, and as an apartment building manager for an agency that assists homeless veterans. He has, however, been incarcerated since June 2021.

Mr. Adams has never resided in the Northern District of Ohio. Indeed, other than the alleged conduct giving rise to the charge in this case, he appears to have no ties whatsoever to this community. This creates a serious obstacle to his potential release pending trial, especially where he asks to reside outside this judicial district until trial. *See United States v. Cashin*, 739 F. Supp. 1107, 1111 (E.D. Mich. 1990) (reasoning that defendant's lack of "professional or financial ties to the community other than his illegal activities" was "a very serious obstacle to [his] release pending trial").

He reports that in 2012 he suffered a traumatic brain injury, and also suffers from peripetias encephalitis, a form of brain damage that causes memory loss. He also reports high blood pressure, chronic back pain, a lung condition, stomach acid issues, hearing issues, and gout. He also reports being diagnosed with hypomania, a bipolar condition that causes depression and anxiety. He denied any current or prior history of substance abuse or substance abuse treatment.

In 2008 he was convicted of driving while license revoked. In 2014, he was fined $500 for obstructing justice without force-false statement to criminal investigator. He failed to appear on

*United States v. Jeremy Adams*
Northern District of Ohio, Case No. 3:24-CR-00014-JJH

one occasion during that case. It does not appear that he was on any form of probation, parole, or other release at the time of the alleged conduct giving rise to the charge against him in this case.

      Mr. Adams formerly served in the United States Army, during which time he resided in several states and was deployed to various countries. Although the government alleges that Mr. Adams failed to report to mandatory training while in the Army Reserve, the Supplement clarifies that he received a "Letter of Instructions – Unexcused Absence" showing that he missed two days of Unit Training Assembly on October 16 and 17, 2004. (ECF #170-1 at PageID 2577). But only one month later, on November 15, 2004, he successfully transferred from the National Guard of North Carolina to the National Guard of California. (ECF #170-2 at PageID 2578). In or about 2010, Mr. Adams was honorably discharged. (ECF #170-3 at PageID 2579). I therefore conclude that Mr. Adams having apparently missed two days of training in 2004 does not provide any probative insight into the question of whether he should be released during the pendency of these proceedings.

      As noted above, Mr. Adams's proposed custodian affirmed her commitment to ensure he remained compliant with any conditions that might be imposed on him and to otherwise discharge the obligations of a third-party custodian. But serious questions remain about the extent to which Mr. Adams could be unsupervised while K.T. is at Friday church meetings or on Sundays while at her friends' home. Allowing Mr. Adams to leave K.T.'s home and attend these obligations with her raises concerns about potential interactions with others, especially minors. So too does the physical proximity to of K.T.'s home to both a pool and a playground. Indeed, during a home inspection conducted by Pretrial Services in California, the officer noted five female minors ranging between 6-15 years old playing on the playground with no adult supervision in sight. The officer also observed "a small child (approximately two) walked toward the playground with his mother. It appeared they were coming from the house directly across from [K.T.]."

      Having considered all these factors, I find that on balance they weigh in favor of continued pretrial detention.

*18 U.S.C. § 3142(g)(4)*

      Under this factor, I "look to more than whether or not the defendant himself has been guilty of physical violence," but also to the safety of the community as a whole. *United States v. Vance*, 851 F.2d 166, 169 (6th Cir.), *cert. denied*, 488 U.S. 893 (1988). "Consideration of this factor encompasses much of the analysis set forth above, but it is broader in scope, as it requires the Court to engage in an open-ended assessment of the 'seriousness' of the risk to public safety." *United States v. Klein*, 533 F. Supp. 3d 1, 17 (D.D.C. 2021) (internal quotations omitted).

      As noted above, I have concern that Mr. Adams, even if released on conditions, will remain a danger to the community.

*United States v. Jeremy Adams*
Northern District of Ohio, Case No. 3:24-CR-00014-JJH

    Location monitoring, though potentially helpful in mitigating concerns about risk of flight, does not ensure an accused will not continue engaging in prohibited conduct. *See United States v. Patton*, No. 20-cr-20393, 2021 WL 267778, at *4 (E.D. Mich. Jan. 27, 2021) (noting that GPS monitoring of defendant's movements "may mitigate a concern for Defendant's future court appearances, such conditions do not ease the Court's concern of his dangerousness"). As the Second Circuit has noted:

> Home detention and electronic monitoring at best elaborately replicate a detention facility without the confidence of security such a facility instills. If the government does not provide staff to monitor compliance extensively, protection of the community would be left largely to the word of [Defendants] that [they] will obey the conditions.

*United States v. Millan*, 4 F.3d 1038, 1049 (2d Cir. 1993) (cleaned up).

    Likewise, as regards restricting Mr. Adams's access to the internet: "Courts have repeatedly noted that, generally, prohibiting internet access to someone on release is 'a near impossibility given the internet's ubiquitous presence[.]'" *United States v. Pece*, No. 1:20-cr-186-1, 2020 WL 6263640, at *7 (N.D. Ohio Oct. 23, 2020) (quoting *United States v. Galvan*, No. 3:20-cr-19, 2020 WL 4604502, at *6 (S.D. Tex. Aug. 11, 2020)). As the Court noted under similar circumstances in *United States v. Sammons*, No. 2:19-cr-107, 2020 WL 613930 (S.D. Ohio Feb. 10, 2020): "While Mr. Sammons insists that he would be without any internet access if he were released, there would be no real mechanism to enforce or police this, and the Court would need to rely on Mr. Sammons's promises to abstain. The Court is not willing to depend on Mr. Sammons's good faith, particularly given the concerning allegations present here." *Id.* at *6.

    I conclude the fourth factor weighs in favor of detention.

* * *

    Although the Sixth Circuit ultimately withdrew its January 2024 order upholding Mr. Adams's pretrial detention, that opinion aptly describes the multiple reasons why continued pretrial detention is warranted in this matter (notwithstanding K.T.'s improved health):

> The nature and circumstances of Adams's offense conduct–supported by significant evidence–further supports a finding that he is a danger if released. *Stone*, 608 F.3d at 948. Adams crossed several states to meet a minor, for the purpose of sex; he previously solicited nude photos and videos from her; and he sent her videos of himself masturbating and having sex with another woman. She also told investigators that she agreed to have sex with Adams because she felt bad after his repeated statements about driving nine hours to see her. Adams allegedly produced numerous visual depictions of the two engaged in sexual acts, including multiple

8

United States v. Jeremy Adams
Northern District of Ohio, Case No. 3:24-CR-00014-JJH

> images of the seventeen-year-old performing oral sex on him. He also stands accused of sharing the images online multiple times, including through the online social media site Tumblr.
>
> The mere existence of the photos is substantial evidence that Adams poses a danger to the community if released. *See Foster*, 2020 WL 6791572, at *3 (quoting *Tang*, 2019 WL 2453655, at *4) (recognizing that once digital images exist "'[t]here is simply no failsafe way to prevent any and all exposure,' even if a defendant forfeits all electronic devices and is denied access to the Internet"). Adams's insistence that the encounter was positive and his focus on the legally irrelevant fact that the seventeen-year-old was above the age of consent is additional clear evidence that he does not appreciate the seriousness and severity of the alleged conduct or charged offense. Further, the allegations of subsequent interactions with a purported fourteen-year-old suggests that Adams poses a danger to girls younger than the age of consent. Producing visual depictions of minors engaged in explicit sexual conduct is illegal, whether or not the sexual conduct is itself criminal. *See* 18 U.S.C. § 2251(a); *United States v. Sibley*, 681 F. App'x 457, 461 (6th Cir. 2017) ("Whether Ohio law permitted the sexual conduct in the photographs is irrelevant to whether [defendant] violated the federal child-pornography laws."). That this pattern was repeated in Adams's interactions with a fictional fourteen-year-old further indicates that Adams is likely to continue engaging in similar conduct if released; the district court did not clearly err in discrediting Adams's unverified explanation for attending the rendezvous, given the sworn affidavit supporting the criminal complaint and his failure to present this argument at his initial detention hearing.
>
> Strong evidence also suggests that no conditions or combination of conditions of release would ensure Adams's appearance at future proceedings: Adams has no ties to the Northern District of Ohio and he was living with his mother–his proposed custodian–when he developed an online sexualized relationship with someone he believed to be a fourteen-year-old girl. In any event, Adams's mother is not a suitable custodian: she suffers from several serious health problems that further diminish confidence in her oversight, and she has been untruthful with pretrial services in the past.
>
> Adams's personal history demonstrates a commitment to service and education and his criminal record is minimal. Weighed against his lack of respect for the charges, apparent pattern of behavior, and lack of ties to the Northern District of Ohio, however, his overall personal history and characteristics weigh in favor of detention, too. Thus, Adams has not shown that the district court improperly weighed any statutory factors in denying his motion to revoke his detention.

*See United States v. Adams*, 6th Cir. No. 23-3755, ECF #24; *see also Adams I*, ECF #179.

9

*United States v. Jeremy Adams*
Northern District of Ohio, Case No. 3:24-CR-00014-JJH

      For the foregoing reasons, having considered the evidence, proffers, arguments, and all required statutory factors in this case, I conclude detention is warranted and the proposed conditions do not reasonably assure the safety of the community or any other person.