UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,             Case No. 3:24-cr-14

         Plaintiff,

    v.                                             MEMORANDUM OPINION
                                                           AND ORDER

Jeremy Adams,

         Defendant.

        Defendant Jeremy Adams is charged with sexual exploitation of a minor (production of child pornography), in violation of 18 U.S.C. § 2251(a). (Doc. Nos. 1 and 9)[1]. Adams requested release on bond through my colleague, Magistrate Judge Darrell A. Clay. Judge Clay conducted a hearing on Adams's release, ultimately denying this request. (Doc. No. 171). Adams subsequently filed an objection to Judge Clay's determination. (Doc. No. 175).

        At the outset, I note Adams also asserts a request for a hearing. But he has no entitlement to a hearing under these circumstances, and I have benefit of a transcript of his detention hearing before Judge Clay, which I have reviewed, his arguments and exhibits, and Judge Clay's determination. Further, Adams presents no new facts or conditions in his objection and would likely be prevented from doing so if he tried. And although I review his request de novo, I find that

---

[1] Adams was previously charged with the same conduct and offense in Case No. 21-cr-504. I dismissed that case, without prejudice, upon a finding that the government waited too long to indict Adams after his arrest. The government promptly recharged Adams in this case.

a hearing is not necessary and would not be useful in making my determination. Accordingly, his request for a hearing is denied.

This is a case with a rebuttal presumption of detention, by virtue of the seriousness of the charge and as reflected in the sentencing range. The burden thus is on the defendant to propose conditions for release to assure the integrity of his release. Here, Adams has proposed conditions of release which include residing with his mother at her home, the offering of her home as surety to help secure her son's appearance and compliance with the court's orders, and her service as custodian during the duration of his case. In addition, Adams offers restrictions to and the monitoring of his movements consistent with good practice and mandates of cases of this kind.

Adams objects to Judge Clay's reliance on his lack of ties to *this* community. Adams is correct; he has ample ties to the state of California where his mother resides, and the absence of ties to Northwest Ohio is not part of my consideration in our federal system (although in reviewing my previous detention decision in Adams's case, the Sixth Circuit seemed to hold otherwise). But the conditions proposed here are not materially different from those I reviewed during Adams's prior detention during the earlier filing of this charge, and his arguments fare no better this time than then. Indeed, very little has changed to strengthen Adams's argument for release.

Adams appealed pro se my prior denial of his release to the United States Court of Appeals for the Sixth Circuit. The circuit panel unanimously rejected his challenge to my decision and his request for relief. Judge Clay relied in part upon the circuit court's decision in denying Adams release. Adams objects to the use of this decision, as the decision was "withdrawn" by the Sixth Circuit shortly after its issuance early this year, and the decision is not even available online through PACER.

While that chronology is undeniably true, to be clear, the only reason for withdrawal of the decision was it landing on the docket two days after I dismissed Adams's first case for the delay

between arrest and indictment. The Sixth Circuit withdrew the decision, consistent with circuit policy, because the case had just been dismissed, and not because the panel had some misgivings about their unanimous decision in the case.[2] But I find the Sixth Circuit's decision, whatever its status in the ether, both informative and insightful, and I quote selectively, but at length, from the decision here, with the court's analysis of the underlying facts of the case and how it affects Adams's risk of dangerousness to the community.

> Section 3142(g)(1) expressly directs courts to ask whether the charged offense involves a minor victim. In this case, it does. The severity and seriousness of the offense is evident in its fifteen-year mandatory minimum sentence, 18 U.S.C. § 2251(e), and the presumption of detention for defendants charged with the crime, 18 U.S.C. § 3142(e). Because the "[r]eceipt, distribution, and possession of child pornography are extremely dangerous to the community, particularly because such activities are often hidden from a defendant's closest friends and family members," *United States v. Foster*, No. 20-5548, 2020 WL 6791572, at *3 (6th Cir. July 20, 2020) (order) (quoting *United States v. Tang*, No. 19-cr-00014, 2019 WL 2453655, at *4 (E.D. Ky. June 12, 2019)), it follows that the production of child pornography is even more pernicious. Likewise, "[a]llegations of enticing a child to engage in sexual activity are particularly dangerous and pose a threat not easily mitigated." Id. (cleaned up).
>
> The nature and circumstances of Adams's offense conduct – supported by significant evidence – further supports a finding that he is a danger if released. *Stone*, 608 F.3d at 948. Adams crossed several states to meet a minor, for the purpose of sex; he previously solicited nude photos and videos from her; and he sent her videos of himself masturbating and having sex with another woman. She also told investigators that she agreed to have sex with Adams because she felt bad after his repeated statements about driving nine hours to see her. Adams allegedly produced numerous visual depictions of the two engaged in sexual acts, including multiple images of the seventeen-year-old performing oral sex on him. He also stands accused of sharing the images online multiple times, including through the online social media site Tumblr.
>
> The mere existence of the photos is substantial evidence that Adams poses a danger to the community if released. See *Foster*, 2020 WL 6791572, at *3 (quoting *Tang*, 2019 WL 2453655, at *4) (recognizing that once digital images exist "'[t]here is simply no failsafe way to prevent any and all exposure,' even if a defendant forfeits all electronic devices and is denied access to the Internet"). Adams's insistence that the encounter was positive and his focus on the legally irrelevant fact that the seventeen-year-old was above the age of consent is additional clear evidence that he does not appreciate the seriousness and severity of the alleged conduct or charged offense.

---

[2] Adams and his counsel may both easily find the Sixth Circuit's opinion on the trial docket of his first case, 3:21-cr-504, Doc. No. 179.

>Further, the allegations of subsequent interactions with a purported fourteen-year-old suggests that Adams poses a danger to girls younger than the age of consent. Producing visual depictions of minors engaged in explicit sexual conduct is illegal, whether or not the sexual conduct is itself criminal. See 18 U.S.C. § 2251(a); *United States v. Sibley*, 681 F. App'x 457, 461 (6th Cir. 2017) ("Whether Ohio law permitted the sexual conduct in the photographs is irrelevant to whether [defendant] violated the federal child-pornography laws."). That this pattern was repeated in Adams's interactions with a fictional fourteen-year-old further indicates that Adams is likely to continue engaging in similar conduct if released; the district court did not clearly err in discrediting Adams's unverified explanation for attending the rendezvous, given the sworn affidavit supporting the criminal complaint and his failure to present this argument at his initial detention hearing.

Finally, the Sixth Circuit found his mother to not be a suitable custodian, as "she suffers from several serious health problems that further diminish confidence in her oversight, and she has been untruthful with pretrial services in the past."

Again, there has been no material change in the evidence of the circumstances surrounding the conduct as alleged, or Adams's troubling conduct as detailed above.

But my primary focus is on the potential danger to the community, not non-appearance. Indeed, Adams has a commendable record of service to his county in the military and has ties to the community in which he would be residing if released. And Adams has rebutted some suggestion that conduct in his history might draw into doubt his willingness to appear in this case. Still, the offense itself carries a mandatory minimum sentence of fifteen years, and that would increase the risk of flight for any defendant, a reality I will not ignore.

Adams raises a number of objections to some of Judge Clay's observations and conclusions, and I'll address some of those concerns now. First, Adams's lack of ties to this community. I've already commented on this issue and it's not part of my consideration, although the Sixth Circuit's opinion more than suggests it could be. Second, the alleged distribution of child pornography "to at least two other females." Perhaps more properly, according to Adams, the evidence reflects distribution to only two females, one of whom was the minor depicted in the images, K.A. Duly noted, but this doesn't really move the needle for me one way or the other.

4

Third, Judge Clay's conclusion that the evidence showed that Adams asked K.A. to lie to the police. While there may be no known forensic evidence to the defense at this stage supporting that conclusion, K.A. did tell the police of Adams's request during her interview. That's certainly enough evidence for Judge Clay to conclude it may well have happened for purposes of his analysis. Finally, Judge Clay's assertion that Adams's charge, involving a minor, weighs strongly in favor of detention. But the Circuit has certainly said as much. "'Allegations of enticing a child to engage in sexual activity are particularly dangerous and pose a threat [not] easily mitigate[d]....'" *United States v. Foster*, No. 20-5548, 2020 WL 6791572, at *3 (6th Cir. July 20, 2020) (order) *(*quoting *United States v. Cornish*, No. 3:20-CR-00003, 2020 WL 1498841, at *4 (E.D. Ky. Mar. 30, 2020)) (alterations by *Foster*).

On balance, even if I conclude that Adams has rebutted the presumption for release based on his proposed conditions, I find there is still a risk of flight based upon his previous nomadic nature, and the seriousness of the conduct and attendant penalty – a minimum mandatory fifteen years in prison.

But it is the danger to the community which gives me the greatest concern, for the reasons I have discussed thus far, and the reasoning and law set forth by the Sixth Circuit above, and which I adopt here as a fair and accurate statement of the state of the law and the evidence in this case.

Were that not enough – and it is – Adams's violation of my no-contact order during the pendency of his charge is disqualifying. His conduct in reaching out to a third-party to encourage her to attempt to ingratiate herself to the alleged victim in this case is outrageous and very troubling. Put another way, what confidence should I have in his adherence to this court's clear instruction to not contact the alleged victim and a potential witness, directly or indirectly, if he is released on bond, if he cannot do so when he's in custody and his communications are so closely monitored?

I have reviewed the necessary factors in my analysis in addition to the presumption created by the charge in this case, including: (1) the nature and circumstances of the offense charged; (2) the

5

weight of the evidence against Adams; (3) Adams's history and characteristics, including his past conduct, criminal history (or lack thereof), and his record of appearance at court proceedings; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. 18 U.S.C. § 3142(g). While I am not troubled by allegations of his failure to appear in the past or any suggestion of criminal history, and commend him for his service in the military, I find the other factors weigh heavily against him and his release, even under the conditions proposed.

Accordingly, Adams's objection to Judge Clay's order of detention is overruled, and I conclude independently that there are no conditions or combination of conditions to reasonably satisfy me that he is not a risk of flight nor a danger to the community. The government has produced evidence that more than covers any burden they may have in this regard. Adams's request for release on bond is denied, and his request for a hearing on his objection is denied.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge